UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *Plaintiff*,<br><br>  v.<br><br>CHARLESTON AREA MEDICAL CENTER, INC. and ST. MARY'S MEDICAL CENTER, INC.,<br><br>   *Defendants*. | Civil Action No. 2:16-cv-03664 |

**COMPLAINT**

The United States of America brings this civil antitrust action to enjoin an agreement by Charleston Area Medical Center, Inc. ("CAMC") and St. Mary's Medical Center, Inc. ("St. Mary's) (collectively, "Defendants") that unlawfully allocated territories for the marketing of competing healthcare services and limited competition between the Defendants.

**NATURE OF THE ACTION**

1. Defendants CAMC and St. Mary's are healthcare providers that operate general acute-care hospitals in Charleston, Kanawha County, West Virginia, and Huntington, Cabell County, West Virginia, respectively. CAMC and St. Mary's compete with each other to provide healthcare services. Marketing is a key component of this competition and includes both print and outdoor advertising, such as newspaper advertisements and billboards.

2. CAMC and St. Mary's agreed to limit marketing of competing healthcare services. According to St. Mary's Director of Marketing, St. Mary's "had an agreement with CAMC that St. Mary's would not advertise on billboards or in print in Kanawha County and that

CAMC would not advertise on billboards or in print in Cabell County." He also testified that "the agreement between St. Mary's and CAMC is still in place today."

3. Defendants' agreement has disrupted the competitive process and harmed patients and physicians. Among other things, the agreement has deprived patients of information they otherwise would have had when making important healthcare decisions and has denied physicians working for the Defendants the opportunity to advertise their services to potential patients.

4. Defendants' agreement is a naked restraint of trade that is *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## JURISDICTION, VENUE, AND INTERSTATE COMMERCE

5. The United States brings this action pursuant to Section 4 of the Sherman Act, 15 U.S.C. § 4, to prevent and restrain Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

6. This Court has subject matter jurisdiction over this action under Section 4 of the Sherman Act, 15 U.S.C. § 4, and 28 U.S.C. §§ 1331, 1337(a), 1345, and 1367.

7. Venue is proper in the Southern District of West Virginia, Charleston Division, under 28 U.S.C. § 1391 and Section 12 of the Clayton Act, 15 U.S.C. § 22. Each Defendant transacts business within the Southern District of West Virginia, and all Defendants reside in the Southern District of West Virginia.

8. Defendants engage in interstate commerce and in activities substantially affecting interstate commerce. Defendants provide healthcare services to patients for which employers, health plans, and individual patients remit payments across state lines. Defendants also purchase supplies and equipment from out-of-state vendors that are shipped across state lines.

## DEFENDANTS AND THEIR MARKETING

9. CAMC is a nonprofit West Virginia corporation headquartered in Charleston, Kanawha County, West Virginia. It operates four general acute-care hospitals (CAMC General Hospital, CAMC Memorial Hospital, CAMC Women and Children's Hospital, and CAMC Teays Valley Hospital) with a total of 908 beds and a medical staff of over 120 employed physicians.

10. St. Mary's is a nonprofit West Virginia corporation headquartered in Huntington, Cabell County, West Virginia. It operates a general acute-care hospital located in Cabell County with 393 beds and a medical staff of over 50 employed physicians. St. Mary's also serves as a teaching hospital for medical students and residents from Marshall University School of Medicine.

11. CAMC and St. Mary's compete with each other to provide hospital and physician services to patients. Hospitals compete through price, quality, and other factors to sell their services to patients, employers, and insurance companies.

12. Marketing is an important tool that hospitals use to compete for patients, and this competition can lead hospitals to invest in providing better care and a broader range of services. Hospitals use marketing to inform patients about a hospital's quality, scope of services, and the expertise of its physicians. An executive of each Defendant testified at deposition that marketing is an important strategy through which hospitals seek to increase patient volume and market share.

13. Defendants' marketing methods include print advertisements, such as newspaper advertisements, and outdoor advertisements, such as billboards.

## UNLAWFUL AGREEMENT BETWEEN
## ST. MARY'S AND CAMC

14.     Since at least 2012, CAMC and St. Mary's have agreed to limit their marketing for competing services.  CAMC agreed not to place print or outdoor advertisements in Cabell County, and St. Mary's agreed not to place print or outdoor advertisements in Kanawha County.  Defendants' marketing departments have monitored and enforced this agreement.

15.     For example, in January 2012, a CAMC urology group asked CAMC's marketing department to advertise its physicians in *The Herald Dispatch*, a Cabell County newspaper.  In response, a CAMC marketing department employee emailed the CAMC Director of Marketing, noting that CAMC does not typically advertise in *The Herald Dispatch* because of its "'gentleman's agreement'" with St. Mary's.  Consistent with its agreement with St. Mary's, CAMC did not place the newspaper advertisement.

16.     In May 2013, St. Mary's Director of Marketing complained to CAMC's Director of Marketing after CAMC ran a newspaper ad promoting a CAMC physicians' group in *The Herald Dispatch*, and succeeded in getting CAMC to agree to remove the advertisement.  In an email from St. Mary's Director of Marketing to other St. Mary's senior executives, he wrote, "I talked with CAMC and they agreed this ad violated our agreement not to advertise in Charleston paper if they didn't advertise in Huntington paper.  Their director of marketing Says she pulled the ad but was concerned it might still run again one more time this Sunday.  I can't call the HD [*Herald Dispatch*] and make sure because they could challenge this type of handshake agreement That [sic] prevents them from getting advertising dollars from a different advertiser.  We'll see and I'll follow up from there but after Sunday I am confident we won't see CAMC again in HD."  Consistent with its agreement with St. Mary's, and as described by St. Mary's Director of Marketing , CAMC asked the *Herald Dispatch* to remove the advertisement.

17. In June 2014, when a CAMC-owned physicians' group requested marketing in Cabell County, a CAMC marketing department employee responded by telling the group's representative that CAMC does not market specialist physicians in Cabell County and St. Mary's does not market specialists in Kanawha County. Consistent with its agreement with St. Mary's, CAMC refused to market that physicians' group in Cabell County.

18. In August 2014, when another CAMC-owned physicians' group requested billboard advertising in Cabell County, a CAMC marketing representative wrote to CAMC's Director of Marketing, "They had asked for print and billboard placement in Huntington. I explained our informal agreement. They understood." CAMC's Director of Marketing replied, "Just watch the county line my friend." Consistent with its agreement with St. Mary's, CAMC did not place print or billboard advertising for the physician practice in Cabell County.

19. The agreement between CAMC and St. Mary's has eliminated a significant form of competition to attract patients by depriving patients in Kanawha and Cabell Counties of information regarding their healthcare-provider choices and physicians in those counties the opportunity to advertise their services to potential patients.

## NO PROCOMPETITIVE JUSTIFICATIONS

20. The Defendants' anticompetitive agreement is not reasonably necessary to further any procompetitive purpose.

## VIOLATION ALLEGED

### Violation of Section 1 of the Sherman Act

21. The United States incorporates paragraphs 1 through 20.

22. CAMC and St. Mary's compete to provide healthcare services. Defendants' agreement is facially anticompetitive because it limits competition between the Defendants by

5

allocating territories for the marketing of competing healthcare services. As a result, the agreement eliminates a significant form of competition to attract patients.

23. The agreement constitutes an unreasonable restraint of trade that is *per se* illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1. No elaborate analysis is required to demonstrate the anticompetitive effect of this agreement.

## REQUESTED RELIEF

The United States requests that the Court:

(A) judge that Defendants' agreement limiting competition constitutes an illegal restraint of interstate trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

(B) enjoin Defendants and their members, officers, agents, and employees from continuing or renewing in any manner the conduct alleged herein or from engaging in any other conduct, agreement, or other arrangement having the same effect as the alleged violations;

(C) enjoin each Defendant and its members, officers, agents, and employees from communicating with any other Defendant about any Defendant's marketing, unless such communication: is related to the legitimate joint provision of services; is part of normal due diligence relating to a merger, acquisition, joint venture, investment, or divestiture; or is related to claims or statements made in a Defendant's Marketing that the other Defendant believes are false or misleading;

(D) require Defendants to institute a comprehensive antitrust compliance program to ensure that Defendants do not enter into or attempt to enter into any similar

        agreements and that Defendants' members, officers, agents, and employees are fully informed of the application of the antitrust laws to the Defendants' businesses; and

(E)    award Plaintiff its costs in this action and such other relief as may be just and proper.

Dated: April 14, 2016

Respectfully Submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

_____
WILLIAM J. BAER
Assistant Attorney General for Antitrust

_____
DAVID I. GELFAND
Deputy Assistant Attorney General

_____
PATRICIA A. BRINK
Director of Civil Enforcement

_____
PETER J. MUCCHETTI
Chief, Litigation I

_____
RYAN M. KANTOR
Assistant Chief, Litigation I

_____
MICHELLE R. SELTZER
Assistant Chief, Litigation I


CAROL A. CASTO
Acting United States Attorney for the
Southern District of West Virginia

 /s/ Matthew Lindsay_____
Matthew Lindsay
Assistant United States Attorney
Robert C. Byrd U.S. Courthouse
Suite 4000
300 Virginia Street
Charleston, WV 25301
Tel. No. 304-340-2338
Matthew.Lindsay@usdoj.gov

_____
KATHLEEN KIERNAN*
BARRY L. CREECH
JOHN LOHRER
GLENN HARRISON
Attorneys for the United States
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W., Suite 4100
Washington, D.C. 20530
(202) 353-3100 (phone)
(202) 307-5802 (fax)
kathleen.kiernan@usdoj.gov

Attorneys for the United States

* Attorney of Record