```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                      AT CHARLESTON

UNITED STATES OF AMERICA,

         Plaintiff,

v.                                 Civil Action No. 2:16-3664

CHARLESTON AREA MEDICAL CENTER,
INC., and ST. MARY'S MEDICAL
CENTER, INC.,

         Defendants.
```

MEMORANDUM OPINION AND ORDER

Pending is the motion for entry of the proposed final judgment, filed by the United States of America ("United States") on July 12, 2016.

I.   Background

Defendant Charleston Area Medical Center, Inc. ("CAMC") is a healthcare provider that operates general acute-care hospitals in Charleston, Kanawha County, West Virginia. St. Mary's Medical Center, Inc. ("St. Mary's") is a healthcare provider that operates general acute-care hospitals in Huntington, Cabell County, West Virginia. Compl. at ¶ 1. The United States alleges in its complaint that at least since 2012, CAMC and St. Mary's entered into an agreement to limit the

marketing of competing healthcare services. Id. at ¶¶ 2, 14. CAMC and St. Mary's agreed that St. Mary's "would not advertise on billboards or in print in Kanawha County and that CAMC would not advertise on billboards or in print in Cabell County." Id. According to the United States, the agreement "disrupted the competitive process and harmed patients and physicians . . . [by a]mong other things[,] . . . depriv[ing] patients of information they otherwise would have when making important healthcare decisions and . . . den[ying] physicians . . . the opportunity to advertise their services to potential patients." Id. at ¶ 3.

The complaint alleges multiple instances of where, pursuant to their agreement, CAMC and St. Mary's did not approve certain advertising, or advertising was otherwise later removed after publication because of a request by one of the hospitals. For example, in 2012, upon asking CAMC's marketing department for permission to advertise in The Harold Dispatch, a CAMC urology group was told that CAMC does not typically advertise in that newspaper due to a "gentleman's agreement" with St. Mary's and thereafter, CAMC did not place the requested advertisement. Id. at ¶ 15. In May 2013, St. Mary's Director of Marketing complained to CAMC's Director of Advertising after CAMC ran an ad in The Harold Dispatch promoting a CAMC physician's group,

2

and upon notification, CAMC agreed to remove the advertisement. Id. at ¶ 16.

On April 14, 2016, the United States instituted this civil action with the filing of its complaint. See Compl., p. 1. In the complaint, the Government seeks injunctive relief and its costs in this action for alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. Id. at p. 5-7.

On the same day that it filed the complaint, the United States filed the proposed final judgment and the competitive impact statement. In accordance with the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) ("APPA"), the United States published notice of the proposed final judgment and the competitive impact statement in the Federal Registrar on April 26, 2016. A summary of the proposed final judgment and the competitive impact statement was also published in The Washington Post and the Charleston Gazette-Mail on April 26-29, 2016 and May 3-5, 2016. No comments were received by the expiration of the sixty-day comment period. Subsequently, on July 12, 2016, the United States certified its compliance with the APPA and moved to enter the proposed final judgment. The APPA procedures having been complied with, the court must determine whether the proposed final judgment is in the public interest.

II.  **Discussion**

a. **Governing Standard**

Proposed consent judgments in antitrust cases brought by the United States must be reviewed by the court to independently determine whether entry of the proposed final judgment "is in the public interest."  15 U.S.C. § 16(e)(1); see also United States of America v. Microsoft Corp., 56 F.3d 1448 (D.C. Cir. 1995) ("Microsoft I") (quoting H.R. Rep. No. 1463, 93d Cong., 2d Sess. 8 (1974) and S. Rep. No. 298, 93d Cong. 1st Sess. 5 (1974)).  In making this determination, the court must consider:

> (A)   the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and
>
> (B)   the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1).  In evaluating whether the proposed final judgment is in the public interest, the inquiry is "a narrow one."  See Massachusetts v. Microsoft Corp., 373 F.3d 1199, 1236

4

(D.C. Cir. 2004) ("Microsoft II"). The court is directed to look at the complaint and the proposed final judgment to determine if the remedies in the proposed final judgment effectively address the harms identified in the complaint. See Microsoft I, 56 F.3d at 1459. "The district court should withhold its approval of the decree only if any of the terms appear ambiguous, if the enforcement mechanism is inadequate, if third parties will be positively injured, or if the decree otherwise makes a mockery of judicial power." Microsoft II, 373 F.3d at 1237 (internal quotations and citations omitted).

### b. The Proposed Final Judgment

The proposed final judgment requires CAMC and St. Mary's to adhere to and refrain from certain anti-competitive conduct and establishes procedures to ensure compliance with the final judgment.

The proposed final judgment prohibits CAMC and St. Mary's from entering into or maintaining an agreement that excludes or limits marketing or allocates territory among themselves. See Proposed Final Judgment at 4. CAMC and St. Mary's also may not communicate with each other about their marketing except if: it relates to joint services they provide; it is part of due diligence relating to a merger or acquisition;

or one defendant believes that the other has made false or misleading statements about it in its marketing. Id.

CAMC and St. Mary's are required to appoint an Antitrust Compliance Officer within thirty days of entry of the final judgment. Id. The Antitrust Compliance Officer is required to, among other things, distribute the final judgment and competitive impact statement to all officers, directors and marketing managers of CAMC and St. Mary's, annually brief each of these people on the final judgment and obtain certification from them that they understand the final judgment and agree to abide by its terms. Id. at 4-5. CAMC and St. Mary's must, promptly upon learning of violations of the final judgment, modify the activity so that it complies with the final judgment and notify the United States of the violation. Id. at 6. CAMC and St. Mary's must annually certify that it has complied with all provisions of the final judgment. Id.

Authorized representatives of the Department of Justice, upon reasonable notice to defendants and upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, shall be permitted to inspect and copy, or require defendants to provide copies of, documents relating to the final judgment and question, either in person or by interrogatories, employees,

6

directors, officers, or agents of CAMC or St. Mary's. Id. at 6-7.

Under the proposed final judgment, the court is to retain jurisdiction so that a party may apply "for further orders and directions as may be necessary or appropriate to carry out or construe" the final judgment, modify any provision, enforce compliance, and punish violations. Id. at 7-8. The final judgment expires five years after the date of its entry, unless the court grants an extension.[1] Id.

The complaint in this matter alleges that CAMC and St. Mary's agreement not to advertise in the other's respective county is an unreasonable restraint of trade because it limits competition in attracting patients. Compl. at ¶ 22. The proposed final judgment broadly prohibits CAMC and St. Mary's from agreeing to or maintaining an agreement to allocate territory for marketing purposes and broadly prohibits the two from discussing their marketing plans except in limited circumstances. CAMC and St. Mary's must annually certify their

---

[1] In order to determine the meaning of the phrase "[u]nless this Court grants an extension," the court conferred with counsel for each of the parties on October 19, 2016, which conference has resulted in a separate order this day entered with respect to the circumstances under which the quoted phrase is to be exercised.

compliance with the judgment order.  Furthermore, the proposed judgment order establishes an Antitrust Compliance Officer, to ensure compliance with the final judgment, as well as external inspections to be completed by representatives of the Department of Justice.

The United States has demonstrated that the proposed final judgment furthers the public interest.  It eliminates the anti-competitive impact of the agreement between CAMC and St. Mary's alleged in the complaint by prohibiting such agreements and limiting marketing communications between the two except in certain circumstances.  See 15 U.S.C. § 16(e)(1)(A).  The proposed final judgment is not ambiguous and does not propose difficulties in implementation.  See id.  It provides a mechanism of enforcement through both internal briefing on compliance with the final judgment by the Antitrust Compliance Officer and outside inspections to be completed by representatives for the Department of Justice.  See id.

In addition, the proposed final judgment will foster competition in the healthcare market, giving patients access to more information regarding which hospitals and physicians to choose for their health care needs.  See 15 U.S.C. § 16(e)(1)(B).  It also allows physicians the opportunity to advertise their services to potential patients in a larger

geographic region than the alleged agreement previously permitted.  See 15 U.S.C. § 16(e)(1)(B).  Accordingly, the court finds that the public interest is served by approving the proposed final judgment between the United States, CAMC and St. Mary's.

### III. Conclusion

In view of these findings, and inasmuch as no party or person has opposed entry of the final judgment, the court ORDERS as follows:

1. That the unopposed motion of the United States to enter the proposed final judgment be, and it hereby is, granted;

2. That the proposed final judgment be, and it hereby is, entered with the court's approval this same date;

3. That this action be, and it hereby is, dismissed and stricken from the docket, with the court retaining jurisdiction pursuant to the final judgment and any provision therein contemplating the potential for future action by the court.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: October 21, 2016

John T. Copenhaver, Jr.
United States District Judge