UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>CHARLESTON AREA MEDICAL CENTER, INC. and ST. MARY'S MEDICAL CENTER, INC.,<br><br>*Defendants.* | Case No.: 2:16-cv-03664-JTC |

**FINAL JUDGMENT**

WHEREAS, Plaintiff the United States of America filed its Complaint on April 14, 2016, alleging that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

AND WHEREAS, Plaintiff and Defendants Charleston Area Medical Center, Inc. and St. Mary's Medical Center, Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

AND WHEREAS, Plaintiff requires the Defendants to agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects alleged in the Complaint;

NOW THEREFORE, before any testimony is taken, without this Final Judgment constituting any evidence against or admission by Defendants regarding any issue of fact or law, and upon consent of the parties to this action, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against the Defendants under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II. DEFINITIONS

As used in this Final Judgment:

(A) "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

(B) "CAMC" means Defendant Charleston Area Medical Center, Inc., a nonprofit hospital system organized and existing under the laws of West Virginia with its headquarters in Charleston, West Virginia, its successors and assigns, and its controlled subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their respective directors, officers, managers, agents, and employees.

(C) "Communicate" means to discuss, disclose, transfer, disseminate, or exchange information or opinion, formally or informally, directly or indirectly, in any manner.

(D) "Joint Provision of Services" means any past, present, or future joint health education campaign or coordinated delivery of any healthcare services by two or more healthcare providers, including a clinical affiliation, joint venture, management agreement, accountable care organization, clinically integrated network, group purchasing organization, management services organization, or physician hospital organization.

(E) "Marketing" means any past, present, or future activities that are involved in making persons aware of the services or products of the hospital or of physicians employed or with privileges at the hospital, including advertising, communications, public relations, provider

2

network development, outreach to employers or physicians, and promotions, such as free health screenings and education.

(F) "Marketing Manager" means any company employee or manager with management responsibility for or oversight of Marketing.

(G) "Person" means any natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, governmental unit, or other legal entity.

(H) "Provider" means any health care professional or group of professionals and any inpatient or outpatient medical facility including hospitals, ambulatory surgical centers, urgent care facilities, and nursing facilities. A health insurance plan, health maintenance organization, or other third party payor of health care services, acting in that capacity, is not a "Provider."

(I) "Relevant Area" means the state of West Virginia; Boyd County, Kentucky; and Lawrence County, Ohio.

(J) "St. Mary's" means Defendant St. Mary's Medical Center, Inc., a nonprofit hospital organized and existing under the laws of West Virginia with its headquarters in Huntington, West Virginia, its successors and assigns, and its controlled subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their respective directors, officers, managers, agents, and employees.

### III. APPLICABILITY

This Final Judgment applies to the Defendants, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

IV.  **PROHIBITED CONDUCT**

(A)  Each Defendant shall not enter into, attempt to enter into, maintain, or enforce any Agreement with any other Provider that:

(1) prohibits or limits Marketing; or

(2) allocates any service, customer, or geographic market or territory between or among the Defendant and any other Provider, unless such Agreement is reasonably necessary to further a procompetitive purpose concerning the Joint Provision of Services.

(B)  Each Defendant shall not communicate with the other Defendant about any Defendant's Marketing, except each Defendant may:

(1) communicate with the other Defendant about joint Marketing if the communication is related to the Joint Provision of Services;

(2) communicate with the other Defendant about Marketing if the communication is part of customary due diligence relating to a merger, acquisition, joint venture, investment, or divestiture; or

(3) communicate with the other Defendant about claims or statements made in the other Defendant's Marketing that the Defendant believes are false or misleading, or to respond to such communications from the other Defendant.

V.  **REQUIRED CONDUCT**

(A)  Within 30 days of entry of this Final Judgment, each Defendant shall appoint, subject to the approval of the United States, an Antitrust Compliance Officer. In the event such person is unable to perform his or her duties, each Defendant shall appoint, subject to the approval of the United States, a replacement within ten (10) working days.

(B) Each Defendant's Antitrust Compliance Officer shall:

(1) furnish a copy of this Final Judgment, the Competitive Impact Statement, and a cover letter that is identical in content to Exhibit 1 within 60 days of entry of the Final Judgment to that Defendant's officers, directors, and Marketing Managers, and to any person who succeeds to any such position, within 30 days of that succession;

(2) annually brief each person designated in Section V(B)(1) on the meaning and requirements of this Final Judgment and the antitrust laws;

(3) obtain from each person designated in Section V(B)(1), within 60 days of that person's receipt of the Final Judgment, a certification that he or she (i) has read and, to the best of his or her ability, understands and agrees to abide by the terms of this Final Judgment; (ii) is not aware of any violation of the Final Judgment that has not already been reported to the Defendant; and (iii) understands that any person's failure to comply with this Final Judgment may result in an enforcement action for civil or criminal contempt of court against each Defendant and/or any person who violates this Final Judgment;

(4) maintain a record of certifications obtained pursuant to this Section; and

(5) annually communicate to all of the Defendant's employees that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of this Final Judgment or the antitrust laws.

(C) Each Defendant shall:

(1) upon learning of any violation or potential violation of any of the terms and conditions contained in this Final Judgment, promptly take appropriate action to

terminate or modify the activity so as to comply with this Final Judgment and maintain all documents related to any violation or potential violation of this Final Judgment;

(2) file with the United States a statement describing any violation or potential violation within 30 days of a violation or potential violation becoming known. Descriptions of violations or potential violations of this Final Judgment shall include, to the extent practicable, a description of any communications constituting the violation or potential violation, including the date and place of the communication, the persons involved, and the subject matter of the communication; and

(3) certify to the United States annually on the anniversary date of the entry of this Final Judgment that the Defendant has complied with all of the provisions of this Final Judgment.

## VI. COMPLIANCE INSPECTION

(A) For the purposes of determining or securing compliance with this Final Judgment, or of any related orders, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other retained persons, shall, upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1) access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2) to interview, either informally or on the record, Defendants' officers, directors, employees, or agents, who may have individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

(B)   Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

(C)   No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

(D)   If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## VII.   RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## VIII. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire five years from the date of its entry.

## IX. NOTICE

For purposes of this Final Judgment, any notice or other communication required to be filed with or provided to the United States shall be sent to the person at the addresses set forth below (or such other address as the United States may specify in writing to any Defendant):

>   Chief
>   Litigation I Section
>   U.S. Department of Justice
>   Antitrust Division
>   450 Fifth Street, Suite 4100
>   Washington, DC 20530

## X.     PUBLIC INTEREST DETERMINATION

The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon, and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Dated: October 21, 2016

Court approval subject to procedures
of Antitrust Procedures and
Penalties Act, 15 U.S.C. § 16

Hon. John T. Copenhaver, Jr.
United States District Court Judge

**Exhibit 1**

[Letterhead of Defendant]

[Name and Address of Antitrust Compliance Officer]

Dear [XX]:

    I am providing you this letter to make sure you know about a court order recently entered by a federal judge in Charleston, West Virginia. This order applies to [Defendant] and all of its employees, including you, so it is important that you understand the obligations it imposes on us. [CEO Name] has asked me to let each of you know that s/he expects you to take these obligations seriously and abide by them.

    Under the order, we are prohibited from agreeing with other healthcare providers (including hospitals and physicians) to limit marketing or to divide any services, customers, or geographic markets or territories between us and other healthcare providers. This means you may not promise, tell, agree with, or give any assurance to another healthcare provider that [Defendant] will refrain from marketing our services to any customer or in any particular geographic area, and you may not ask for any promise, agreement, or assurance from them that they will refrain from marketing their services to any customer or in any particular geographic area. In addition, you may not communicate with [other Defendant] or its employees about our marketing plans or their marketing plans. (While there are a few limited exceptions to this rule, such as discussing joint projects, you must check with me before you communicate with anyone from [other Defendant] about marketing plans.)

    A copy of the court order is attached. Please read it carefully and familiarize yourself with its terms. The order, rather than the above description, is controlling. If you have any

questions about the order or how it affects your activities, please contact me. Thank you for your cooperation.

    Sincerely,
    [Defendant's Antitrust Compliance Officer]